# GEORGE F. MUENKEL v. OTTO MUENKEL AND OTHERS.[1]

## June 13, 1919.

## No. 20,905.

**Verdict sustained by evidence.**

1. There is evidence to sustain a verdict against defendants for assault upon plaintiff's home and property in the night-time by the throwing of rocks accompanied by riotous language.

**Assault on house — evidence of fear admissible.**

2. It was proper to permit proof that the inmates of plaintiff's home were frightened. This evidence tended to characterize the violence of the acts done. It was also proper to prove that the effect on plaintiff's wife was such as to cause her partial incapacity to perform household duties.

**Witness — cross-examination.**

3. The court properly permitted cross-examination of an adverse witness by the party calling him.

**Appeal and error — question not reviewable.**

4. The propriety of sustaining an objection to a question asked a witness cannot be considered on appeal, if there is no showing as to what testimony the witness would give.

**Impeachment of witness — evidence of malice.**

5. It was proper to prove previous conviction of defendants who were witnesses for the purpose of impeachment, and if the conviction arose out of trouble with plaintiff proof of the trouble was admissible to show malice.

**Evidence inadmissible.**

6. A provoking remark by plaintiff, made before the first trouble, was properly rejected, there being no proof that it was communicated to defendants.

**Evidence admissible.**

7. Evidence that one of several defendants, jointly sued, counseled restraint of lawlessness at the time of an affray, is admissible as to him. It was not error to reject certain evidence offered for that purpose, since

[1]Reported in 173 N. W. 184.

it was not shown that the occasion was the same as the one complained of.

**Charge to jury.**

8. It was proper for the court to charge that the acts complained of were criminal offenses.

**Compensatory damages.**

9. Compensatory and exemplary damages are given, if at all, in a lump sum.

**Appeal and error — reversal.**

10. That the court gave the jury no opportunity to assess punitive damages against the defendants separately, is not ground for reversal.

**Damages not excessive.**

11. The damages are not excessive.

**Denial of new trial — motion by minor.**

12. One of six defendants was a minor, but was over 20 years old, at the trial. He was ably defended by the same attorney who defended the others. He admitted wrongdoing. After verdict he asked for appointment of a guardian ad litem and for a new trial on the ground of his infancy. The application was presented by the attorney who represented him on the other trial. No other attorney was suggested. No prejudice was shown. After he became of age the motion for a new trial was denied. *Held* no error.

Action in the district court for Houston county to recover $5,000 for assault. The answers were general denials. The case was tried before Catherwood, J., and a jury which returned a verdict for $1,200. From an order denying their motions for a new trial, defendants appealed Affirmed.

*Edward Lees* and *Lees & Bunge,* for appellants.

*W. A. Deters* and *William S. Harl,* for respondent.

HALLAM, J.

1. On April 23, 1915, there was a neighborhood "sociable" at a school-house in Winnebago Valley, Houston county. The defendants were all there. One of the defendants brought a keg of beer and located it in a pasture some distance down the road to the east of the school-house. Defendants went back and forth between the school-house and the pasture from time to time during the evening. Plaintiff's farm house is across the road and a little to the west of the school-house. Some

of his out-buildings, including a hog house, lie to the east of the school-house. Plaintiff and his father were at the hog house during the early part of the evening. There is evidence that, while they were there, rocks were thrown at the hog house, and one came through the roof. Several men were outside, two were seen to throw rocks, one of the defendants was recognized as one of them. Later in the evening, and towards midnight, plaintiff, his wife and baby, and his father and mother, were in plaintiff's house. Rocks were thrown at the house, first from the east side and later from the south side. One large pointed rock, as big as a man's fist, crashed through the front window and landed on the floor beside plaintiff's wife and baby. There was shouting in riotous and vulgar and profane language. After throwing rocks at the house the crowd chased plaintiff's cattle, threw rocks at some of his out-buildings and indulged in other acts of lawlessness. There is evidence that all of the defendants were in the crowd and that they all participated in the acts of lawlessness, though not all of them were seen to actually throw rocks. Plaintiff and his family were much frightened. All sat up all night except plaintiff's wife. She lay down with her baby without undressing. The jury found for plaintiff and gave damages in the sum of $1,200. From an order denying a new trial, defendants appeal.

The evidence is undoubtedly sufficient to sustain a verdict for plaintiff in some amount. Defendants assign numerous errors in law in the conduct of the trial.

2. The court admitted proof that the members of plaintiff's family were frightened. This was not error. No damages were claimed for their fright. The testimony had some tendency to characterize the violence of the acts done and was proper. Evidence that the acts of defendants caused nervous shock to plaintiff's wife, which resulted in her incapacity to perform her usual household duties as before, was proper, and this element of damages was proper to be considered.

3. The court permitted plaintiff's counsel to cross-examine plaintiff's witness, Selmar Johnson. The witness was plainly an unwilling one and it was within the discretion of the court to permit cross-examination. Selover v. Bryant, 54 Minn. 434, 56 N. W. 58, 21 L. R. A. 418, 40 Am. St. 349. It was likewise proper to ask the witness whether defendant Sheehan told him to say "I don't know" to everything that

was asked him while on the stand. The answer was "yes" and was properly received.

4. Defendant Sheehan denies telling Johnson this, and, after stating that he did have a conversation with Johnson, was asked to state what the conversation was. Defendants complain of the exclusion of his answer. As to this it is only necessary to say that there was no offer of proof and therefore no showing that the answer would have been material or proper evidence. Conlan v. Grace, 36 Minn. 276, 30 N. W. 880; Nichols & Shepard Co. v. Wiedemann, 72 Minn. 344, 75 N. W. 208, 73 N. W. 41.

5. Plaintiff was permitted to prove, that at a previous "sociable" trouble had occurred between plaintiff and some of the defendants, and that three of defendants were arrested and pleaded guilty and were put under bonds to keep the peace. This testimony was proper. Evidence of previous conviction of a person called as a witness is always proper as impeachment. These defendants were witnesses. Evidence of the nature of the crime was properly received. Thompson v. Bankers Mut. Casualty Ins. Co. 128 Minn. 474, 151 N. W. 180, Ann. Cas. 1916 A, 277. Evidence of the former trouble was also admissible as tending to show malice. Such testimony should not be permitted in too much detail. The trial court must use discretion in these particulars. Discretion was not abused in this case.

6. Defendants then offered to prove a provoking remark made by plaintiff to the mother of one of the defendants as inciting the former trouble. This evidence was rejected. There was no evidence or offer of evidence to show that the remark was ever communicated to defendants. The evidence was therefore properly rejected.

7. Defendants' counsel offered to prove that defendant Otto Muenkel saw Sheehan throw a rock, and said to him: "Don't do that, quit that, you might hurt somebody." This evidence was rejected. If this occurred on the occasion of the rock throwing on which this action is based, no doubt it was admissible as to him. It would then have a tendency to show that this defendant was restraining the lawlessness instead of participating in it. But the witness made it reasonably clear that it did not occur on that occasion. He said that at the time it happened he saw no one except Sheehan present. He did not fix the time,

but from all his testimony we may infer it was the early part of the evening. He did not locate the place, but did not suggest that the rock was thrown at or towards plaintiff's house. In fact he denied having seen plaintiff's house and denied knowing where it is. From all his testimony it must be inferred that this incident occurred many rods from plaintiff's house, and not at the time of the bombardment of which the plaintiff complains. It had therefore little materiality and its rejection was not reversible error.

8. Exception is taken to the charge of the court that the acts of which the defendants were charged constituted several criminal offenses. The acts, if committed, did constitute the criminal offenses mentioned and we see no impropriety in the court so stating. The rules as to exemplary damages apply to wrongful acts punishable as crimes. Boetcher v. Staples, 27 Minn. 308, 7 N. W. 263, 38 Am. Rep. 295; 17 C. J. 981. The fact that the act committed is a crime as well as a tort is not conclusive of the right to exemplary damages. Ward v. Blackwood, 41 Ark. 295, 48 Am. Rep. 41; Brown v. Allen, 35 Iowa, 306. But the relation of malice to crime is so close that we think criminality is proper to be considered in determining whether the elements necessary to exemplary damages are present. See Anderson v. International Harvester Co. 104 Minn. 49, 116 N. W. 101, 16 L.R.A.(N.S.) 440; Wills v. Noyes, 12 Pick. 324.

9. The court charged: "No sum should * * * be awarded * * * as exemplary damages, unless you find generally in favor of the plaintiff, * * * and your verdict should be in its form a verdict in a single lump sum as the plaintiff's total damages." By this the court meant that compensatory and exemplary damages were to be assessed, if at all, not separately, but in a lump sum. This was proper.

10. Defendants complain that this gave the jury no opportunity to assess punitive damages against the several defendants separately. If the charge can be so construed this was not ground for reversal. This court held in Warren v. Westrup, 44 Minn. 237, 46 N. W. 347, 20 Am. St. 578, that joint wrongdoers are each liable for all the damages following the wrongful act and that the jury "should estimate the damages against all guilty defendants according to the amount which they think the most culpable must pay." It does not appear from the record of

143—M. 3

that case whether exemplary damages were involved. Some jurisdictions apply this same rule to exemplary as well as compensatory damages. 17 C. J. 989. In Nelson v. Halvorson, 117 Minn. 255, 135 N. W. 818, Ann. Cas. 1913D, 104, an action for false imprisonment against the party instituting the proceeding and the constable who served void process, where the wrong was said to be not "the same in kind or motive," it was held there should be separate submission of the question of exemplary damages. In this case the defendants are liable, if at all, as joint participants in the riotous acts charged. Whether there should ever be separate submission of the question of exemplary damages in any such case, we are not called upon to decide. Neither separately nor together did these defendants request separate verdicts as to either compensatory or exemplary damages. They did not at the trial except to the charge on the ground that it did not so submit the case. Nor do we think the evidence in this case was such as to warrant a finding of different degrees of culpability among defendants who, under the instruction of the court, were found liable at all. We think the verdict should not now be set aside because the trial court failed to submit separate verdicts as against the several defendants.

11. It is earnestly contended that the damages are excessive. We have considered this feature of the case very carefully. The verdict is large. The physical damage was small, but if the testimony on behalf of plaintiff is true there were circumstances in aggravation that would sustain a substantial verdict. We do not feel warranted in disturbing the amount of the verdict.

12. The defendant Mittendorf was 20 years and 4 months of age at the time of the trial. No guardian ad litem had been appointed. He was ably represented at the trial by the same attorney who represented the other defendants. He testified that he was "one of the rock throwers" and threw a rock himself, though he denies the incident as testified to by plaintiff's witnesses. After the verdict was rendered he made application for the appointment of a guardian ad litem and at the same time moved for a new trial on the ground that he was not of age. The hearing on his application and motion was continued until after he became of age. The same attorney appeared in these proceedings as on the trial. There has been no suggestion of the employment of any other

or that the same or any other attorney could present his defense any better than it was presented. There was no actual prejudice. The court had jurisdiction over him. The proceeding was not void. Eisenmenger v. Murphy, 42 Minn. 84, 43 N. W. 784, 18 Am. St. 493. If he had been still a minor when the court finally disposed of the case the situation might be different. It has often been held that if the court appoints a guardian ad litem during the trial it may properly proceed. Patterson v. Melchior, 106 Minn. 437, 119 N. W. 402; Webster v. Page, 54 Iowa, 461, 6 N. W. 716; Wickersham v. Timmons, 49 Iowa, 267; Sabine v. Fisher, 37 Wis. 376; Galbraith v. Pennington, 184 Mo. App. 618, 170 S. W. 668.

In view of the fact that want of prejudice is almost conclusively shown we hold that the verdict should not be set aside on this ground. Order affirmed.