## EMIL H. SCHMIDT v. C. J. MINOR, SOLE TRADER, AND OTHERS.[1]

November 4, 1921.

No. 22,434.

**Liability of master for torts of servant.**

    1. The facts stated in the opinion bring this—an action for damages for assault and battery—within the rule that a master is responsible for the torts of his servant in the course and within the scope of his employment with a view to the furtherance of the master's business and not for a purpose personal to himself.

[1] Reported in 184 N. W. 964.

**Assault and battery — exemplary damages against master.**

2. Such facts warranted the jury in their discretion in awarding exemplary damages. Such damages may be recovered from the master, even though he did not participate in, authorize or ratify his servant's acts, if done in the course of the performance of the duties of his employment and within the scope thereof.

**Verdict not excessive.**

3. The damages were not excessive.

Action in the district court for Ramsey county to recover $5,000 for assault and battery. The case was tried before Hanft, J., who when plaintiff rested granted the motion of the Minor Realty Company to dismiss the action as against it, and at the close of the testimony denied the motion of C. J. Minor for a directed verdict, and a jury which returned a verdict for $550. From an order denying their motions for judgment notwithstanding the verdict or for a new trial, defendants appealed. Affirmed.

*Arthur E. Shanahan* and *F. W. Murphy,* for appellants.

*Albin E. Bjorklund,* for respondent.

LEES, C.

This is an action for damages for assault and battery committed on plaintiff by the defendant Reid Minor. Plaintiff recovered a verdict for $550, and defendants appealed from an order denying their motion for a new trial.

The defendant C. J. Minor was the owner and proprietor of the Aberdeen hotel in the city of St. Paul. The defendant Reid Minor is his son and was employed by him in the hotel. Plaintiff is a cook who was employed in the hotel when he was assaulted.

The principal grounds on which a reversal is asked are: (1) That the defendant C. J. Minor is not answerable for the acts with which his son is charged; (2) that the court erred in instructing the jury that they might award exemplary damages; (3) that the damages are excessive and were given under the influence of passion and prejudice.

1. According to the testimony of Reid Minor, at the time of the assault, and for several years before, he was employed to keep the books

and look after his father's interests generally. He made out the menus, rented rooms, occasionally hired and discharged help and had supervision over the employes. In his father's absence he had general supervision over the hotel. Plaintiff began to work on August 26, 1919, as a second cook. He had supposed he was to receive $4 and work 8 hours a day. The chief cook told him he was to work on a split shift of 9 hours a day. He was dissatisfied and gave notice he would not stay after the second day, on August 27. At about 5 o'clock in the afternoon of that day Reid Minor, having learned that plaintiff was going to leave, went to the kitchen to try to persuade him to stay until·after the State Fair, which was to be held about a week later. He was unsuccessful. There was an exchange of profane and abusive language and finally plaintiff was told to leave at once. He picked up his tools, left the kitchen and started for the dressing room to change his clothes. Minor followed him to see, as he testified, "that he didn't take what didn't belong to him; that is my duty there." It was then that the alleged assault was committed. Minor was victorious in the combat, and, when he released plaintiff after the struggle was over, the latter seized a knife and struck at him, hitting his hand with the back of the·blade. According to plaintiff's testimony Minor was the aggressor up to that point in the affray. The facts outlined bring the case within the rule that a master is responsible for the torts of his servant in the course and within the scope of his employment with a view to the furtherance of the master's business and not for a purpose personal to himself. Sina v. Carlson, 120 Minn. 283, 139 N. W. 601; Burnham v. Elk Laundry Co. 121 Minn. 1, 139 N. W. 1069; Roemer v. Jacob Schmidt Brewing Co. 132 Minn. 399, 157 N. W. 640, L.R.A. 1916E, 771; Sunderland v. Northern Express Co. 133 Minn. 158, 157 N. W. 1085, L.R.A. 1916E, 1151.

2. [The circumstances under which the assault was committed, if plaintiff related them truthfully, were such that the jury might find the assault was wanton and malicious; that, angered by plaintiff's refusal to stay, Minor heaped abuse upon him, and when plaintiff returned insult for insult he was attacked and beaten. If plaintiff's version of the affair was correct, the case was one where it was within the discre-

tion of the jury to award exemplary damages. Baumgartner v. Hodgdon, 105 Minn. 22, 116 N. W. 1030; Moore v. Fisher, 117 Minn. 339, 135 N. W. 1126, and such damages might be assessed against C. J. Minor as the employer of his son, although he was not present and did not authorize or ratify his son's acts.

There is some conflict in the authorities as to when and how far a principal or master is liable for exemplary damages for the torts of his agent or servant. The Supreme Court of the United States has held that guilty intention on the part of the defendant is required, in order to charge him with exemplary damages; that since such damages are awarded not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others, they can only be awarded against one who has participated in the offense. Lakeshore, R. R. Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. ed. 97. In some jurisdictions the rule is that such damages may not be recovered from the principal or master, unless he participated in the acts of his agent or servant or previously authorized or subsequently ratified them. 8 R. C. L. p. 597, § 143; 17 C. J. p. 989, § 290. In other jurisdictions the rule is that, if the agent or servant is liable for exemplary damages, such damages may be recovered from the principal or master, even though the acts of the agent or servant were not authorized or ratified, provided of course they were done by the agent or servant in the course of the performance of the duties of his employment and were within its scope. 8 R. C. L. p. 599, § 144; 17 C. J. p. 991, § 290. This court has adopted the rule last above stated. Peterson v. Western Union Tel. Co. 75 Minn. 368, 77 N. W. 985, 43 L.R.A. 581, 74 Am. St. 502; Anderson v. International Harvester Co. 104 Minn. 49, 116 N. W. 101; Hammer v. Forde, 125 Minn. 146, 145 N. W. 810; Helppie v. N. W. Drainage Co. 127 Minn. 360, 149 N. W. 461; Daigle v. Summit M. Co. 144 Minn. 178, 174 N. W. 830.

The alignment of the states on opposite sides of the question is given in Voves v. Great Northern Ry. Co. 26 N. D. 110, 143 N. W. 760, annotated in 48 L.R.A.(N.S.) 35. It was remarked in that case that the rule permitting the award of exemplary damages in any case is an

anomaly in the law with no sound reason behind it—"a hybrid between a display of ethical indignation and the imposition of a fine."

Be that as it may the doctrine is too deeply implanted in the law to be uprooted for no better reason than that it is illogical. Justification for the extension of the doctrine to include a master whose servant wantonly and maliciously assaulted another, is thus stated in N. W. Boyer & Co. v. Coxen, 92 Md. 366, 48 Atl. 161: The master selects his servants and ought to know what sort of persons he is investing with authority to act for him. A business of any considerable proportions is for the most part conducted through agents and servants and if the principal or master cannot be held for exemplary damages, in many instances it would be equivalent to abolishing that character of damages, for a judgment against an employe is often uncollectable and no punishment to the wrongdoer. Somewhat similar was the reasoning of this court in Peterson v. Western Union Tel. Co. supra.

We hold there was no error in the court's refusal to instruct the jury that in no event could they assess exemplary damages against C. J. Minor.

3. The trial court in a memorandum following the order denying a new trial said he took little stock in plaintiff's assertion that he had been severely injured or in the claim that the assault was malicious, but was satisfied that, although the jury was generous in awarding damages, neither passion nor prejudice had entered into the verdict, and therefore it should not be set aside or reduced. We find nothing in the record warranting us in interfering with this exercise of the rather broad discretion which a trial court possesses in acting on an application to vacate or reduce a verdict on the ground that it is excessive.

The other assignments of error have not escaped our attention. None are of sufficient merit to require discussion. The order denying a new trial is affirmed.

HALLAM, J., took no part.